UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORO NEGRO DECUS PTE. LTD.,<br>ORO NEGRO FORTIUS PTE. LTD.,<br>ORO NEGRO IMPETUS PTE. LTD.,<br>ORO NEGRO LAURUS PTE. LTD., and<br>ORO NEGRO PRIMUS PTE. LTD.,<br><br>      Plaintiffs<br><br>      v.<br><br>PERFORADORA ORO NEGRO, S. de R.L. de C.V.,<br><br>      Defendant. | 18 Civ. _____<br><br>**COMPLAINT** |

Plaintiffs Oro Negro Decus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Impetus Pte. Ltd., Oro Negro Laurus Pte. Ltd., and Oro Negro Primus Pte. Ltd. (the "Vessel Owners"), by their undersigned attorneys, Paul, Weiss, Rifkind, Wharton & Garrison LLP, allege as follows:

## Nature of the Action

1. The Vessel Owners bring this action in admiralty to recover five drilling vessels (the "Vessels") wrongfully withheld by Defendant Perforadora Oro Negro, S. de R.L. de C.V. ("Perforadora"), the bareboat charterer of the Vessels, after the bareboat charters were terminated.

2. The Vessel Owners entered into bareboat charter agreements (the "Bareboat Charters") for the vessels *Decus*, *Fortius*, *Impetus*, *Laurus*, and *Primus* to Perforadora.

3. Under each Bareboat Charter the parties agreed that the charter period would last only as long as Perforadora had a corresponding drilling contract, or a "sub-charter" with Pemex Exploración y Producción (collectively, the "Pemex Drilling Contracts").

1

4. Each Bareboat Charter expressly states that it terminates upon the termination of its corresponding Pemex Drilling Contract.

5. The Pemex Drilling Contracts terminated effective on or about October 2, 2017 for *Impetus*; November 13, 2017 for *Decus*, *Laurus*, and *Primus*; and December 26, 2017 for *Fortius*. Each corresponding Bareboat Charter also terminated at those times.

6. Upon the termination of each Bareboat Charter, Perforadora was obligated to redeliver the corresponding Vessel to its Vessel Owner, but failed to do so to date.

7. Perforadora has also failed to comply with its obligations to allow the Vessel Owners to inspect or survey the Vessels and pay charter hire.

8. The Vessel Owners bring this action for breach of charter for a declaration that Perforadora must redeliver the Vessels pursuant to Perforadora's post-termination obligations under the Bareboat Charters.

9. The Vessel Owners also seek a declaration that Perforadora breached the Bareboat Charters by failing to comply with its obligations to allow the Vessel Owners to inspect or survey the Vessels and pay charter hire, and that consequently, the Vessel Owners may withdraw the Vessels from service.

**The Parties**

10. Plaintiff Oro Negro Decus Pte. Ltd. is a corporation organized and existing under the laws of the Republic of Singapore, with its principal place of business at 137 Telok Ayer Street, #08-01, Singapore, 68602. Plaintiff Oro Negro Decus Pte. Ltd. is and at all material times has been the owner of the vessel *Decus*.

11. Plaintiff Oro Negro Fortius Pte. Ltd. is a corporation organized and existing under the laws of the Republic of Singapore, with its principal place of business at 137

Telok Ayer Street, #08-01, Singapore, 68602.  Plaintiff Oro Negro Fortius Pte. Ltd. is and at all material times has been the owner of the vessel *Fortius*.

12. Plaintiff Oro Negro Impetus Pte. Ltd. is a corporation organized and existing under the laws of the Republic of Singapore, with its principal place of business at 137 Telok Ayer Street, #08-01, Singapore, 68602.  Plaintiff Oro Negro Impetus Pte. Ltd. is and at all material times has been the owner of the vessel *Impetus*.

13. Plaintiff Oro Negro Laurus Pte. Ltd. is a corporation organized and existing under the laws of the Republic of Singapore, with its principal place of business at 137 Telok Ayer Street, #08-01, Singapore, 68602.  Plaintiff Oro Negro Laurus Pte. Ltd. is and at all material times has been the owner of the vessel *Laurus*.

14. Plaintiff Oro Negro Primus Pte. Ltd. is a corporation organized and existing under the laws of the Republic of Singapore, with its principal place of business at 137 Telok Ayer Street, #08-01, Singapore, 68602.  Plaintiff Oro Negro Primus Pte. Ltd. is and at all material times has been the owner of the vessel *Primus*.

15. On information and belief, Defendant Perforadora is a corporation organized and existing under the laws of Mexico, with its principal place of business at Av. Isla de Tris, No. 28-PB, Colonia Priv. San Miguel, Ciudad del Carmen, Campeche, México, C.P. 24157.  Perforadora has specified an additional address for service at Javier Barros Sierra # 540, Park Plaza Torre 1, office 103, Santa Fe, Mexico City, 01210. Defendant Perforadora is and has been at all material times herein the bareboat charterer of the vessels *Decus*, *Fortius*, *Impetus*, *Laurus*, and *Primus*.

### Jurisdiction and Venue

16. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

3

Rules of Civil Procedure in that it involves claims for breach of maritime contracts for the charter of vessels.

17. The Court has personal jurisdiction over Perforadora pursuant to Section 19.1 of each of the Bareboat Charters, by which Perforadora expressed and irrevocably agreed to submit to the jurisdiction of this Court.

18. Venue properly lies in this Court in accordance with the terms of the Bareboat Charters.

**Relevant Facts**

19. Each Vessel Owner owns a jack-up drilling vessel, which it agreed to charter to Perforadora under its respective Bareboat Charter.

20. As a material requirement of each of the Bareboat Charters, Perforadora entered into a separate long-term drilling contract with Pemex (a Pemex Drilling Contract) for each of the Vessels to lease or "sub-charter" the Vessels to Pemex.

21. Pemex is a state-owned Mexican company; a producer, refiner, and distributor of crude oil, natural gas, and petroleum products; and one of the largest petroleum companies in the world.

22. Pursuant to the Pemex Drilling Contracts, Perforadora sub-chartered the Vessels to Pemex for oil drilling in Mexican waters of the Gulf of Mexico. In return, Pemex made payments to Perforadora, which then was required to use those payments to pay charter hire to the Vessel Owners pursuant to the Bareboat Charters.

**Bareboat Charters**

23. On or about April 29, 2016, each Vessel Owner and Perforadora executed an Amendment and Restatement to the Bareboat Charter Agreement, amending and restating the terms by which each Vessel Owner agreed to charter its Vessel to Perforadora.

24. Under Article 8 of the Bareboat Charters, the Vessel Owners are entitled to the majority of the payments owed by Pemex under the Pemex Drilling Contracts. Perforadora is required to pay each Vessel Owner charter hire at the day rate under the corresponding Pemex Drilling Contract, less certain deductions and plus value added tax or other taxes that the Vessel Owner was required to pay to the Mexican authorities in connection with the charter hire payments.

25. Under Section 8.3 of the Bareboat Charters, Perforadora must pay the Vessel Owners monthly in arrears in United States dollars immediately after receiving charter hire under the Pemex Drilling Contracts.

26. Under Article 3 of the Bareboat Charters, if the corresponding Pemex Drilling Contract is terminated in accordance with its terms or for any other reason prior to the termination date, that termination results in the immediate and automatic termination of the Bareboat Charter.

27. Under Article 5 of the Bareboat Charters, the Vessel Owners have the right at any time to inspect or survey the Vessels, or to instruct a duly authorized surveyor to carry out such survey on their behalf, to allow the Vessel Owners to determine the condition of the Vessels and satisfy themselves that the Vessels are being properly repaired and maintained.

28. Under Article 5 of the Bareboat Charters, Perforadora must permit the Vessel Owners to inspect the Vessels' log books whenever requested and to furnish the Vessel Owners with full information regarding accidents or damage to the Vessels whenever required.

29. Under Article 11 of each Bareboat Charter, at the expiration of the charter period, Perforadora is required to redeliver the chartered Vessel to the Vessel Owner at a safe and ice-free port or to an offshore location as agreed between the parties in writing. Perforadora

must redeliver the Vessel to the Vessel Owner in as good structure, state, condition, and class as that in which the Vessel was originally delivered, with the exception of fair wear and tear.

30. Article 11 further requires that Perforadora give the Vessel Owner at least 30 days' preliminary notice and at least 14 days' definite notice of the expected date, range of ports of redelivery or port or offshore location of redelivery.

**Terminations of the Bareboat Charters**

31. On or about October 3, 2017, Pemex served Perforadora with notices of termination of the Pemex Drilling Contracts. The notices, which became effective immediately upon service to Perforadora, provided for the immediate termination of the Pemex Drilling Contract for *Impetus* and for the termination of the other Pemex Drilling Contracts after the passage of certain amounts of time.

32. On or about October 5, 2017, each Vessel Owner sent notice of termination of the Bareboat Charters to Perforadora (the "Notices of Termination"). Each Vessel Owner confirmed that upon termination of the Pemex Drilling Contract involving its Vessel, the corresponding Bareboat Charter also terminated. Such confirmations of termination did not relieve Perforadora of any return or payment obligations.

33. On information and belief, on or about October 2, 2017, the Pemex Drilling Contract for *Impetus* terminated.

34. Thus, on or about October 2, 2017, the Bareboat Charter for *Impetus* also terminated.

35. On information and belief, on or about November 13, 2017, the Pemex Drilling Contracts for *Decus*, *Laurus*, and *Primus* terminated.

36. Thus, on or about November 13, 2017, the Bareboat Charters for *Decus*, *Laurus*, and *Primus* also terminated.

37. On information and belief, on or about December 26, 2017, the Pemex Drilling Contract for *Fortius* terminated.

38. Thus, on or about December 26, 2017, the Bareboat Charter for *Fortius* also terminated.

39. As of the date of this Complaint, Perforadora has not given preliminary or definite notice of redelivery to the Vessel Owners for any of the Vessels.

40. All conditions precedent required of the Vessel Owners under the Bareboat Charters have been performed.

41. The Vessel Owners seek redelivery at a safe and ice-free port or offshore location in Mexico.

42. The Vessel Owners have suffered and continue to suffer damages and lost opportunity because Perforadora has failed to redeliver each Vessel after the termination of each Bareboat Charter.

**Exchanges with Perforadora Regarding the Condition of the Vessels**

43. After the Vessel Owners sent the Notices of Termination to Perforadora and received no preliminary or definite notice of redelivery in response, the Vessel Owners attempted to determine the seaworthiness and other conditions of the maintenance and repair of the Vessels. Inadequate maintenance or improper operation of drilling vessels can result in adverse consequences.

44.     On or about January 3, 2018, the Vessel Owners, acting through duly authorized power of attorney in a letter signed by Manuel Ruiz de Chávez Gutiérrez de Velasco, wrote to Perforadora (the "<u>First Inspection Request</u>").

45.     Pursuant to Section 5.1 of the Bareboat Charters, the Vessel Owners requested: (1) immediate access to the Vessels so that they (or any duly authorized surveyor) might inspect and/or survey the Vessels to ascertain their condition and determine whether they are being properly repaired and maintained; (2) information as to the precise location of each Vessel by January 8, 2017; and (3) documents or authorizations necessary to ensure immediate and continued access.

46.     Pursuant to Section 5.3 of the Bareboat Charters, the Vessel Owners also requested that Perforadora provide the log books of each of the Vessels and full information regarding any casualties or other accidents or damage to any of the Vessels.

47.     The First Inspection Request was without prejudice to the Vessel Owners' rights related to the terminations of the Bareboat Charters.

48.     As of January 10, 2018, Perforadora failed to provide any response to the Vessel Owners' First Inspection Request.  On or about that date, the Vessel Owners, acting through duly authorized power of attorney in a letter signed by Mr. Ruiz de Chávez, again wrote to Perforadora reiterating their requests and asking Perforadora to comply with the requests by January 15, 2018 (the "<u>Second Inspection Request</u>" and, together with the First Inspection Request, the "<u>Inspection Requests</u>").

49.     Like the First Inspection Request, the Second Inspection Request was without prejudice to the Vessel Owners' rights related to the termination of the Bareboat Charters.

8

50. On or about January 15, 2018, Jesús Ángel Guerra Méndez of the law firm Guerra González y Asociados S.C. responded to the Vessel Owners' Inspection Requests. Mr. Guerra Méndez purported to write on behalf of Integradora de Servicios Petroleros Oro Negro, S.A.P.I. De C.V. ("Integradora"), Perforadora, Oro Negro Drilling (as defined below), and the Vessel Owners. He claimed that the Inspection Requests were not written on behalf of the Vessel Owners' true and legitimate representatives. Instead, Mr. Guerra Méndez asserted that he and Manuel Garciadiaz from the law firm Davis Polk & Wardwell LLP were the true and legitimate representatives of the Vessel Owners and that all information related to the Vessels was in the possession and available to the Vessel Owners through them.

51. On or about January 15, 2018, acting through duly authorized power of attorney in a letter signed by Mr. Ruiz de Chávez, the Vessel Owners wrote to Perforadora asking it to confirm immediately that Perforadora had obtained, maintained, and fully paid for insurances described pursuant to Article 10 of the Bareboat Charters (the "Insurance Request" and, together with the Inspection Requests, the "Request Letters").

52. Like the Inspection Requests, the Insurance Request was without prejudice to the Vessel Owners' rights related to the termination of the Bareboat Charters.

53. On or about January 22, 2018, Mr. Guerra Méndez responded to the Vessel Owners' Insurance Request. Mr. Guerra Méndez again purported to write on behalf of Integradora, Perforadora, Oro Negro Drilling, and the Vessel Owners and claimed that that the Vessel Owners' Insurance Request was not written on behalf of the Vessel Owners' true and legitimate representatives. He again asserted that he and Mr. Garciadiaz were the true and legitimate representatives of the Vessel Owners and that all information related to the Vessels was in the possession and available to the Vessel Owners through them.

9

54. As a direct result of Perforadora's obstruction and deprivation, Perforadora has prevented the Vessel Owners from determining any risk of unseaworthy and unsafe conditions of the Vessels and any Vessel operations, including risk of danger to human safety and the marine environment in the Gulf of Mexico; violated Vessel Owners' rights under the Bareboat Charters; and caused the Vessel Owners to suffer damages now and in the future.

**The Vessel Owners' Representatives**

55. Since October 9, 2017 Mr. Ruiz de Chávez has been, and the undersigned attorneys for purposes of this action now are, the Vessel Owners' true and legitimate representatives.

56. The Vessel Owners are controlled by parent company Oro Negro Drilling Pte., Ltd. ("Oro Negro Drilling" and, together with the Vessel Owners, the "Singapore Entities"), which was formerly controlled by parent company Integradora. Integradora also controls Perforadora.

57. On or about January 24, 2014, Oro Negro Drilling issued bonds (the "Bonds" and, the holders thereof, the "Bondholders") pursuant to a Bond Agreement (as amended, restated, or otherwise modified from time to time, the "Bond Agreement") between Oro Negro Drilling, as Issuer, and Nordic Trustee ASA ("Nordic Trustee"), as Bond Trustee.

58. On or about April 29, 2016, Oro Negro Drilling and Nordic Trustee entered into an amendment and restatement of the Bond Agreement. To secure Oro Negro Drilling's obligations under the Bond Agreement, (1) Integradora (a) guaranteed Oro Negro Drilling's obligations under the Bond Agreement and (b) granted Nordic Trustee a charge over all of the shares of Oro Negro Drilling, and (2) Oro Negro Drilling granted Nordic Trustee

charges over all of the shares of each of the Vessel Owners (together with Nordic Trustee's charge over the shares of Oro Negro Drilling, the "Share Charges").

59. Upon an Event of Default (as defined in the Bond Agreement, an "Event of Default"), the Share Charges provided Nordic Trustee with rights to, among other things, (1) immediately replace the directors of the Singapore Entities and/or (2) immediately enforce upon the shares of the Singapore Entities. The Share Charges are governed by Singapore law, and the Singapore courts have exclusive jurisdiction to settle any disputes arising out or in connection with them.

60. On or about September 11, 2017, Perforadora filed a voluntary *concurso* before the Mexican courts, which was, and continues to be, an Event of Default under the Bond Agreement.

61. On or about September 25, 2017, Nordic Trustee, among other things, duly notified Oro Negro Drilling of the aforementioned Event of Default and, exercising its rights under the Share Charges, (1) removed all of the Singapore Entities' directors other than Noel Blair Hunter Cochrane, Jr.—an independent director with limited voting rights who Nordic Trustee had previously appointed and who sat on the board of each of the Singapore Entities—and (2) appointed Roger Alan Bartlett and Roger Arnold Hancock as their replacements. Accordingly, since September 25, 2017, the boards of directors of each of Singapore Entities have been, and continue to be, composed of Mr. Cochrane, as an independent director with limited voting rights, and Mr. Bartlett and Mr. Hancock, as directors entitled to vote on all matters decided by the Singapore Entities' boards of directors.

62. On or about October 1, 2017, Oro Negro Drilling failed to make a payment (the "Payment Default") and comply with liquidity covenants, which constituted further Events of Default under the Bond Agreement.

63. On or about October 4, 2017, Nordic Trustee exercised its rights under the Share Charges to transfer Oro Negro Drilling's shares to Nordic Trustee's nominee, OND Pte. Ltd. ("OND"), a newly formed Singapore company organized to receive Oro Negro Drilling's shares on behalf of the Bondholders. Through the transfer, OND became the sole shareholder of Oro Negro Drilling, which in turn is the sole shareholder of the Vessel Owners.

64. OND is controlled by Mr. Haridass Ajaib, the sole nominee director of OND. Mr. Haridass holds the shares of OND on behalf of the Bondholders.

65. The Vessel Owners are no longer controlled by Integradora or the Vessel Owners' former directors. As a result of Nordic Trustee's replacement of the Singapore Entities' boards of directors and transfer of Oro Negro Drilling's shares to OND, the Vessel Owners are now controlled by their new boards of directors—each composed of Mr. Bartlett, Mr. Hancock, and Mr. Cochrane—for the benefit of the Bondholders.

66. Furthermore, on or about October 9, 2017, the Vessel Owners' boards of directors duly resolved to revoke, on behalf of the Vessel Owners, "any and all authorities including any Powers of Attorney given by the Company to any person previously," including any which may have been purportedly granted to Mr. Guerra Méndez and Mr. Garciadiaz (the "October 9 Resolutions").

67. Also on October 9, 2017, but after the execution of the October 9 Resolutions, Mr. Hancock duly executed, on behalf of each of the Vessel Owners, new powers of attorney in favor of, among other persons, Mr. Ruiz de Chávez. In valid exercise of his

aforementioned powers of attorney, Mr. Ruiz de Chávez executed the First Inspection Request (dated as of January 3, 2018), the Second Inspection Request (dated as of January 10, 2018), and the Inspection Request (dated as of January 15, 2018) on behalf of the Vessel Owners as their true and legitimate representative.

68. The Vessel Owners are companies incorporated in Singapore, and the High Court of the Republic of Singapore has jurisdiction over certain matters involving them, including actions against foreign defendants domiciled outside of Singapore where: (1) the claim is founded in a tort constituted at least in part by an act or omission occurring in Singapore or where damages are suffered in Singapore; or (2) the claim is brought to affect a contract or to obtain relief for breach of a contract, where the contract (a) was made in Singapore or made as a result of an essential step being taken in Singapore, or (b) is governed by Singapore law.

69. On or about January 30, 2018, the High Court of the Republic of Singapore issued an order enjoining Integradora, Alonso Del Val Echeverria, and Gonzalo Gil White whether by themselves or through their agents from: (1) relying on *Resolutions in writing of Sole Shareholder of the Company* to cause the Vessel Owners to commence, continue, or maintain any legal action in Mexico or elsewhere purportedly on behalf of the Vessel Owners; or (2) commencing, continuing, or maintaining any legal action in Mexico or elsewhere purportedly on behalf of the Vessel Owners until further order.

70. By reason of the replacement of the boards of directors of the Vessel Owners and in accordance with the October 9 Resolutions and the High Court of Singapore's order, none of Mr. Guerra Méndez or Mr. Garciadiaz, who are believed to have been instructed by Integradora, and Mr. Alonso Del Val Echeverria or Mr. Gonzalo Gil White, who have

purported to act on behalf of the Vessel Owners, has any legitimate authority to act on behalf of the Vessel Owners.

72. On or about March 13, 2018, the Vessel Owners' boards of directors duly resolved to authorize and direct Paul, Weiss, Rifkind, Wharton & Garrison LLP to file and pursue the relief set forth in this Complaint.

**Payment of Charter Hire**

72. Perforadora last paid Plaintiff Oro Negro Decus Pte. Ltd. charter hire on September 7, 2017 for approximately $4.1 million.

73. As of the date of this Complaint, Perforadora still possesses *Decus*, but has not paid Oro Negro Decus Pte. Ltd. charter hire for any period after the one accounted for by the September 7, 2017 payment.

74. On information and belief, Perforadora owes Oro Negro Decus Pte. Ltd. additional charter hire.

75. Perforadora last paid Plaintiff Oro Negro Fortius Pte. Ltd. charter hire on July 25, 2017 for approximately $2.1 million.

76. As of the date of this Complaint, Perforadora still possesses *Fortius*, but has not paid Oro Negro Fortius Pte. Ltd. charter hire for any period after the one accounted for by the July 25, 2017 payment.

77. On information and belief, Perforadora owes Oro Negro Fortius Pte. Ltd. additional charter hire.

78. Perforadora last paid Plaintiff Oro Negro Impetus Pte. Ltd. charter hire on July 27, 2017 for approximately $2.3 million.

79. As of the date of this Complaint, Perforadora still possesses *Impetus*, but has not paid Oro Negro Impetus Pte. Ltd. charter hire for any period after the one accounted for by the July 27, 2017 payment.

80. On information and belief, Perforadora owes Oro Negro Impetus Pte. Ltd. additional charter hire.

81. On information and belief, on May 1, 2017, *Primus* was reactivated after a year-long idle period.

82. As of the date of this Complaint, Perforadora still possesses *Primus*, but has not paid Oro Negro Primus Pte. Ltd. charter hire for any period after May 1, 2017.

83. On information and belief, Perforadora owes Oro Negro Primus Pte. Ltd. charter hire.

84. On information and belief, on September 12, 2017, *Laurus* was reactivated after a year-long idle period.

85. As of the date of this Complaint, Perforadora still possesses *Laurus*, but has not paid Oro Negro Laurus Pte. Ltd. charter hire for any period after September 12, 2017.

86. On information and belief, Perforadora owes Oro Negro Laurus Pte. Ltd. charter hire.

## FIRST CLAIM
### (Breach of the Bareboat Charters – Redelivery)

87. The Vessel Owners repeat and reallege paragraphs 1-86.

88. On or about October 2, 2017, the Bareboat Charter for *Impetus* terminated because the Pemex Drilling Contract for *Impetus* terminated.

89. On or about November 13, 2017, the Bareboat Charters for *Decus*, *Laurus*, and *Primus* terminated because the Pemex Drilling Contracts for *Decus*, *Laurus*, and *Primus* terminated.

90. On or about December 26, 2017, the Bareboat Charter for *Fortius* terminated because the Pemex Drilling Contract for *Fortius* terminated.

91. Pursuant to Article 11 of the Bareboat Charters, upon the termination and the expiration of the charter periods, Perforadora was obligated to redeliver the Vessels to the Vessel Owners with not less than thirty calendar days' preliminary notice and not less than fourteen calendar days' definite notice.

92. By failing to redeliver the Vessels to the Vessel Owners after the charter periods terminated and by failing to issue either preliminary or definite notice, Perforadora has breached its obligations under Bareboat Charters.

93. The Vessel Owners are entitled to immediate redelivery of the Vessels in the same or as good structure, state, condition, and class, with the exception of fair wear and tear, as when the Vessels were delivered to Perforadora.

94. The Vessel Owners have and will continue to suffer damages as a direct result of Perforadora's breaches of Bareboat Charters and failure to timely redeliver the Vessels.

## SECOND CLAIM
**(Breach of the Bareboat Charters – Inspection and Survey Rights)**

95. The Vessel Owners repeat and reallege paragraphs 1-86.

96. The Vessel Owners have repeatedly contacted Perforadora requesting access to the Vessels and log books pursuant to their rights under Article 5 of the Bareboat Charters, but Perforadora has wrongfully failed and refused to comply with this request.

97. By failing to provide the Vessel Owners with access or log books and thus failing to allow the Vessel Owners to inspect and survey the Vessels, Perforadora has committed a material and fundamental breach of the Bareboat Charters to the extent they otherwise remained in effect.

98. The Vessel Owners have and will continue to suffer damages as a direct result of Perforadora's failure to allow the Vessel Owners to inspect and survey the Vessels pursuant to their rights under the Bareboat Charters.

### THIRD CLAIM
### (Breach of the Bareboat Charters – Nonpayment of Charter Hire)

99. The Vessel Owners repeat and reallege paragraphs 1-86.

100. Under the Bareboat Charters to the extent they remain in effect, Perforadora is obligated to pay the Vessel Owners charter hire.

101. Perforadora has failed to pay the Vessel Owners owed charter hire.

102. By its failure and refusal to pay such charter hire, Perforadora has committed a material and fundamental breach of the Bareboat Charters to the extent they otherwise remained in effect.

103. The Vessel Owners have and will continue to suffer damages as a direct result of Perforadora's nonpayment of charter hire.

### PRAYER FOR RELIEF

WHEREFORE, the Vessel Owners respectfully request that this Court enter judgment in their favor against Defendant Perforadora and grant the following relief:

(A) Under the court's inherent discretion under common law and pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201-2202:

      a. Declaring that each Bareboat Charter terminated as of when its corresponding Pemex Drilling Contract terminated;

      b. In the alternative, declaring that each Bareboat Charter terminated as a result of Perforadora's material breaches and repudiations of the charters;

      c. Declaring that Perforadora breached each of the five Bareboat Charters by (1) failing to redeliver each Vessel at the expiration of each charter period; (2) failing to allow the Vessel Owners to inspect or survey the Vessels; and (3) failing to pay charter hire;

      d. Declaring that, because of Perforadora's breaches of the Bareboat Charters, the Vessel Owners may withdraw their Vessels from service;

(B)    Ordering Perforadora to redeliver the vessels *Decus*, *Fortius*, *Impetus*, *Laurus*, and *Primus* in Mexico, and follow the procedures set forth in Article 11 of the Bareboat Charters;

(C)    Awarding the Vessel Owners damages resulting from Perforadora's breaches of the Bareboat Charters;

(D)    Awarding the Vessel Owners their attorneys' fees, costs, and disbursements incurred as a result of this action; and

(E)    Awarding the Vessel Owners such further relief as the Court deems just and proper.

Dated: New York, New York
March 15, 2018

        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:   /s/ Aidan Synnott
      Aidan Synnott (asynnott@paulweiss.com)
      Andrew N. Rosenberg (arosenberg@paulweiss.com)
      Christopher Hopkins (chopkins@paulweiss.com)
      Michael J. Colarossi (mcolarossi@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 373-2122

*Attorneys for Plaintiffs Oro Negro Decus Pte. Ltd., Oro Negro Fortius Pte. Ltd., Oro Negro Impetus Pte. Ltd., Oro Negro Laurus Pte. Ltd., and Oro Negro Primus Pte. Ltd.*